J. S. MESSER, Appellee, v. AVERY COMPANY, Appellant.

SALES: Conditional Acceptance of Order. An order for an article for specified future delivery, subject to cancellation *by the buyer* prior to the delivery day, with an acceptance of said order by the manufacturer "*subject to the demands upon our capacity,*" creates

no obligation on the manufacturer to set aside or manufacture the article to meet the *possible* delivery; and a failure by the manufacturer to deliver on the specified date is no breach of the contract, when such failure is caused by the bona-fide sale, prior to said day, of the manufacturer's entire supply.

*Appeal from Polk District Court.*—H. S. DUGAN, Judge.

NOVEMBER 22, 1921.

SUIT for damages for breach of contract. Because of a prayer for equitable relief, the case was brought on the equity side, and so tried. There was a decree for the plaintiff, and the defendant appeals.—*Reversed.*

*Dunshee & Brody,* for appellant.

*George Cosson, L. E. Francis,* and *J. T. Conn,* for appellee.

EVANS, C. J.—I. The petition alleged that there was a mutual mistake in the contract sued on, and asked for reformation. The defendant conceded the mistake, and we have no occasion to give any attention to that feature of the case. At the time of the transaction under consideration, the defendant was a manufacturer of farm implements, comprising threshing outfits. The plaintiff was a local dealer, who for some years had transacted more or less business with the defendant, as such local dealer. The particular contract involved in this controversy was in the form of an order for a threshing outfit. The pleading of the plaintiff is that this order became a contract by the acceptance of the defendant, and that the defendant thereafter breached the same by failing to deliver; whereby the plaintiff lost a sale and the resulting profits thereof. The contract price to the plaintiff was to be $2,200. Plaintiff's prospective profit on resale is alleged to have been $1,400. By the decree, the plaintiff was allowed $1,100.

The order in question was signed by the plaintiff on April 15, 1914, and the acceptance was made upon April 22, 1914. The date fixed therein for delivery was on or before July 1st. The order was in its terms conditional, in that the right of

countermand was reserved up to July 1st. Likewise, the acceptance by the defendant was conditional, and was made "subject to the demands upon our capacity." The oufit ordered included a certain 20-horse-power engine. Shortly prior to July 1st, the defendant's supply of such engine became wholly exhausted, whereby it became unable to deliver on July 1st. One of the decisive questions in the case is: Was there a breach of the contract by the defendant by failure to deliver an engine on July 1st, notwithstanding that its supply was wholly exhausted at that time? The consideration of this question requires the statement of a few details. The order in question was taken, in the first instance, by Albright, a traveling solicitor for the defendant. It was drawn upon a printed blank form, prepared and in use by the defendant. This printed blank form contained a provision giving to the proposed purchaser the right of countermand "in case of crop failure in his locality," upon "written notice to the Avery Company at Peoria, Illinois, ten days prior to date of shipment." This right of countermand extended also to other causes, subject to a payment of stipulated damages. Into the particular order now under consideration was written with pen and ink the following condition: "Privilege of countermanding this order up to July 1, 1914, if crop is bad or a failure." Albright had no authority to accept the order. It was drawn subject to acceptance at the home office in Peoria, and was sent there with the recommendation of Albright. On April 22d, it was accepted on the following terms:

"This contract is accepted by us subject to the demands upon our capacity, fire, strikes, and causes beyond our control. Accepted April 22, 1914. Avery Company, by C. E. Bronner, Sales Manager, Peoria, Illinois."

With this acceptance, the order was returned to Messer, and was received by him in due course of mail.

As to the liability of the defendant for alleged breach, the plaintiff's contention is twofold:

(1) That, under the acceptance as above set forth, the defendant was bound to deliver the outfit on July 1st, in the absence of countermand by plaintiff, unless, perhaps, it could show the impossibility of performance for some of the reasons stated in the acceptance.

. (2) That, subsequent to the acceptance above set forth, there was an absolute acceptance by correspondence by District Sales Manager Crawford, at Des Moines. This latter contention we will consider in a separate division hereof, and will confine ourselves now to a consideration of the first point.

The real question at this point is, What is the fair purport of the stated condition "subject to demands upon our capacity?"

We may assume first, as elementary economics, that the general objective of a manufacturing concern is to make all the output it can sell, and to sell all the output it can make. Overproduction and oversale are each to be avoided, as an occasion of loss. While the ideal, therefore, is to avoid both, approximation is the best that practical judgment can do, and one or the other of these is always present, to some degree. By the conditional character of the order and of the acceptance, the parties stood to each other in a tentative position, and mutually agreed to postpone absolute decision until July 1, 1914. At no time prior to July 1st was plaintiff bound. The defendant consented to this suspension of undertaking on the part of the plaintiff, "subject to demands upon our capacity." This expression could only mean that demands upon defendant's supply prior to July 1st should take priority over plaintiff's order, as long as it was held in abeyance by the stipulated contingency. There is no dispute in the record but that the defendant's supply of 20-horse-power engines was completely exhausted by about June 22d. Nor can any question be made, upon the record, as to the good faith of the defendant. It does appear that, on May 26th, the defendant advised the plaintiff of the probability, or at least the possibility, of a shortage in its supply, and offered to deliver him the outfit at once. This offer was promptly declined by the plaintiff. The theory of the plaintiff at this point, which appears to have been adopted by the trial court, was that, inasmuch as the supply lasted up to within a few days of July 1st, the defendant ought to have set aside an outfit, for the purpose of delivery to the plaintiff in the event that the plaintiff should decide to accept the same. This theory wholly ignores the terms of the conditional acceptance, and withholds from the defendant all protection therefrom. If the defendant owed such a duty to the plaintiff on June 22d, it owed the same duty from the begin-

ning.   July 1st was upon the very eve of the threshing season. To require the defendant to set aside outfits to meet all conditional acceptances of conditional orders held in abeyance up to July 1st was, in effect, to require it to withdraw all such outfits from the market, and to refuse to sell the same in response to any demand therefor.   In the event of the countermand of the conditional order or orders, these outfits so withdrawn from the market would remain in the hands of the defendant as an over-production, notwithstanding that the supply had been less than the demand.   There is no reason disclosed by this record why there should be any strained construction of the conditions of the acceptance, in order to fix liability upon the defendant.   The counter conditions imposed by the proposed purchaser and seller upon each other were fairly responsive, and operated equitably. The plaintiff could have accelerated the date of absolute liability at any time, by declaring a readiness to accept delivery.   He was not bound to wait until July 1st before rendering effective the obligations of the proposed purchase and sale.   The defendant *was* bound to wait for plaintiff's election.   It had no power reserved to accelerate the date of the decision.   In stipulating for the right of countermand up to July 1st, it was entirely reasonable and equitable that plaintiff should carry the risk of prior demands upon the supply while he hesitated in decision. Such was the effect of the conditional acceptance.

The further theory is urged by the plaintiff that it was incumbent upon the defendant to show that it was beyond the capacity of its factory to have manufactured an additional engine.   It does appear that, with the output of the 1914 season, the defendant abandoned permanently the manufacture of that type of engine.   The argument, in substance, is that, if the factory had the *capacity* to manufacture one more for the use of the plaintiff, it ought to have done so, and that it was incumbent upon the defendant to show that it did not have that capacity. That is to say, though the plaintiff might reject a tender on July 1st, yet the defendant should manufacture an engine for the purpose of a tender.   This is not the natural construction of the conditional acceptance.   The natural inference is that the season's output at the factory was determined long before the beginning of the threshing season.   The acceptance was not

made subject to the *capacity* of the factory. It was made subject to the "*demands* upon our capacity." The defendant did not agree to refuse any demand for the purchase of its output. On the contrary, it made its acceptance of plaintiff's conditional order subject to such demands. It is our conclusion, therefore, that, upon this feature of the case, no breach of contract is shown as against the defendant.

II. The plaintiff's second contention is that, whatever the effect of the condition which we have considered in the foregoing division, there was an absolute acceptance of plaintiff's order by correspondence, subsequent to the date of such conditional acceptance. Reliance is had at this point upon a letter written by Crawford, the district manager at Des Moines, under date of April 25, 1914, as follows:

"Des Moines, Iowa, April 25, 1914.

"E. B. Messer & Son,

"Hartley, Iowa.

"Gentlemen:

"Your order dated April 15, 1914, for a complete threshing outfit is at hand and the company have accepted same. This machinery will be shipped to you July 1st as per terms of the order, without you should order it earlier. You will note that settlement is to be given as follows: One note for $1,950 and one note for $250, due October 1, 1914, without interest if paid at maturity."

At the time of the receipt of this letter, the plaintiff had already in his hands the conditional acceptance from the home office at Peoria. There is nothing in the letter here quoted that is inconsistent with such conditional acceptance. The acceptance came to the plaintiff from the home office, and was made upon the printed blank form upon the back of the order which was signed by the plaintiff. The conditional form of acceptance was known to the plaintiff, not only when he received it back, duly signed by the home office, but was known to him when he signed the order, and before it was sent to the home office for such acceptance. The district manager's office at Des Moines had nothing to do with such acceptance, further than that he was

advised of it.   His letter relied upon at this point does not
purport, of itself, to be an acceptance.   It simply purports to
advise the plaintiff that acceptance has been made.   Acceptance
*had* been made, and plaintiff already knew it and knew its con-
ditions. . We are clear that the letter in question was not effective
to eliminate the condition of the acceptance.   The only other
correspondence appearing in the record is a letter of May 26,
1914, written also by Crawford from the Des Moines office, as
follows:

"E. B. Messer & Son,
"Hartley, Iowa.
"Gentlemen:

"Your order dated April 15th, providing for shipment July
1st, contains a clause permitting you to countermand this order
any time up to July 1st.

"We might say to you that we are now facing a proposition
of being short of 20-horse engines.   We have the engine right
here at Des Moines, as well as the separator, and can make
prompt shipment.   We are willing that this machinery be sent
to you any time and we think you ought to have it right there
on the ground as a sample.   We want everything understood
and we do not want you to cancel the order on the 1st of July.

"At the same time, while we are short of these engines and
have really oversold, we are going to ask you if you cannot let
us ship this machinery now.   Our factory will no doubt order
out the goods to some point where the machinery is sold and the
party wants prompt delivery; but we have had such pleasant
dealings with E. B. Messer & Son of Hartley that we are anxious
indeed to fill your order.   We want you to continue to trade
with us and for that reason we are doing this—not to force you
to take the machinery now, but to protect you.   We therefore
trust that you will notify us by return mail to make shipment
promptly."

On May 27th, the plaintiff replied as follows:

"Avery Company,
"Des Moines, Ia.
"Gentlemen:

"Yours of the 26th inst. received. We cannot comply with your wishes relative to shipment of outfit, as crops are too uncertain.

"Yours respectfully,
"E. B. Messer & Son."

We find nothing in this correspondence that could be deemed in any sense a waiver of the condition of acceptance. It was an offer by the defendant to put an end to all condition and contingency. It indicates entire good faith on the part of the defendant. It is our conclusion that there is nothing in the subsequent correspondence between the parties that changed their mutual rights and liabilities under the order and acceptance as originally made. The result is that there was no breach of the contract on the part of the defendant.

III. There are other features of the record upon which we have not touched, because they are material only as bearing upon the measure of damages. In view of our conclusion announced in the foregoing divisions, it is needless that we determine whether there was any competent proof of damage.

For the reasons indicated, the decree entered below must be held erroneous, and it is, accordingly, reversed.—*Reversed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.